# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# AT OWENSBORO
# CIVIL ACTION NO. 4:10CV-105-M

PERCY S. SHEPARD                                                                PLAINTIFF

v.

**DAVIESS COUNTY DETENTION CENTER** *et al.*                      DEFENDANTS

## MEMORANDUM OPINION

Plaintiff filed this *pro se* civil rights action under 42 U.S.C. § 1983 proceeding *in forma pauperis*. This matter is before the Court on preliminary review of the complaint pursuant to 28 U.S.C. § 1915(e) and *McGore v. Wrigglesworth*, 114 F.3d 601 (6th Cir. 1997). For the reasons set forth below, the Court will dismiss all of Plaintiff's claims except for his claim alleging denial of medical care under the Fourteenth Amendment and state-law negligence claim against Defendant Tatem.

## I.

Plaintiff states in the complaint that he was a pre-trial detainee at the Daviess County Detention Center ("DCDC"). Plaintiff names the following as Defendants: DCDC; PTS of America, LLC ("PTS"); DCDC Detention Officers Boonie, Hill, Asbre, and Sgt. T. Jones; DCDC Medical Nurse Susan Tatem; and Three Unknown Agents of PTS. He sues Defendants Boonie, Asbre, Jones, Tatem, and Three Unknown PTS Agents in their individual and official capacities.

Plaintiff identifies his first claim as a "Violation of Article IV, Section II and 18 U.S.C. § 3182 (Illegal/Un-Lawful/Un-Reasonable Detention during and after 'Extradition Process.')" In support of this claim, Plaintiff avers that on September 26, 2009, he was arrested and incarcerated in the Dekalb County Jail in Georgia awaiting extradition to Michigan. On

September 28, 2009, he "signed and waived extradition." On October 5, 2009, three PTS agents arrived at the Dekalb County Jail to transport Plaintiff to Michigan "for arraignment for Child Support." Plaintiff informed the PTS agents that they needed to bring his blood pressure medicine. The PTS Agents said that "they were running out of time and needed to pick up another inmate in GA." On October 7, 2009, Plaintiff arrived at DCDC where he remained for eight days before being transported to Michigan for his arraignment.[1]

In his second claim, Plaintiff asserts suppression of due process rights in the form of denial of access to phones, to out-going U.S. mail, to the courts, and to his court-appointed attorney and denial of the right to file a grievance. Plaintiff states that while he was incarcerated at DCDC he made verbal and written requests to call his attorney and requested 42 U.S.C. § 1983 forms. He also states that on October 16, 2009, Defendant Jones denied his grievance stating that it was not PTS's policy to permit inmates access to any phone calls or mail for security reasons. Further, Plaintiff states that during his eight-day incarceration at DCDC, "the following officers where informed verbally also: (C/O Boonie, Hill, Asbre, Hoskin and Sgt. T Jones)."

In his third claim, Plaintiff claims a denial of equal protection under federal and state law, discriminatory practices, and administrative misconduct. In support of this claim, Plaintiff states that he "observed c/o Boone flash taser-gun warning site light on unknown inmates private area;" that during a "shake down 'DCDC' officers said 'they saw smoke, but took inmates ink pens and attempted to take 'P' inmates yellow copies of grievance forms and phone numbers;"

---

[1] Plaintiff uses footnotes in the body of his complaint; however, there are no citations or explanatory text associated with the footnotes. Plaintiff also refers in the complaint to a "Legal Argument" attachment, but there is no such attachment to the complaint.

that DCDC housing unit B-184 contained sixteen assigned bunks, but an additional seven inmates were assigned to the bare floor with mats; and that on occasion Plaintiff noticed DCDC officers using "inappropriate behavior toward inmates: rude threatening, loud, intimidating, outbursts."

In his fourth claim, Plaintiff claims "Cruel and Unusual Punishment Negligent Medical Care, Un-Safe Transportation and Un-Fair Treatment." In support of this claim, Plaintiff states that when he was booked into DCDC he informed DCDC staff that PTS left his blood pressure medicine and that he needed medical care. Plaintiff states that he made several medical requests in writing and verbally to Defendant Nurse Tatem and other staff members, but he did not receive medical care until October 12, 2009. As a result, Plaintiff states that he "suffered blindness, spotted vision, headaches and blood pressure was over 200 on top number for six days." Plaintiff also states that the van in which he was transported from Georgia to Michigan was unsafe in that it had no seatbelts, air bags, rear roof vent or windows, or back or head rests, and the back door was locked with the keys in the driver's pocket.

As relief, Plaintiff seeks $10,000,000 in monetary damages, unspecified injunctive relief, and $500,000 in punitive damages.

## II.

Because Plaintiff is proceeding *in forma pauperis*, this Court must review the instant action. 28 U.S.C. § 1915(e); *McGore*, 114 F.3d at 608-09. Upon review, this Court must dismiss a case at any time if the Court determines that an action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). The trial court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Id.* at 327.

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, -- U.S. -- , 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519 (1972), the duty does not require the Court "to conjure up unpled allegations," *McDonald v. Hall*, 610 F.2d

16, 19 (1st Cir. 1979), or to create a claim for a plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975). To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.

### Claim One

In Plaintiff's first claim, he alleges a violation of Article IV, Section II, and 18 U.S.C. § 3182, the Extradition Clause of the Constitution and the federal extradition statute, respectively. It is not clear from the facts stated by Plaintiff what actions he alleges violated these provisions. However, Plaintiff does state that he "signed and waived extradition." Because Plaintiff signed a waiver of extradition, "he had neither a constitutional nor a statutory right to specific extradition procedures." *Scull v. New Mexico*, 236 F.3d 588, 596 (10th Cir. 2000). Furthermore, the Sixth Circuit has clearly held that a failure to conform to extradition procedures does not state a claim under § 1983. *Barton v. Norrod*, 106 F.3d 1289, 1295 (6th Co. 1997). The Sixth Circuit explains its rationale behind this rule as follows:

> While we do not condone officials who fail to comply with extradition procedures, a fugitive's rights are sufficiently protected by those limitations placed on the demanding state by the Constitution when determining his guilt or innocence. And the Constitution is satisfied when one present in court is convicted of [a] crime after having been fairly apprized of the charges against him and after a fair trial in accordance with constitutional procedural safeguards. Allowing an additional layer of constitutional challenge affords the fugitive little benefit, while placing an unnecessary burden on the extradition process, something the Supreme Court has stressed must not be done.

*Id.* at 1298-99 (citations and internal quotation marks omitted); *see also Barnett v. Clark*, No. 1:06-cv-235, 2008 U.S. Dist. LEXIS 4738 (E.D. Tenn. Jan. 22, 2008) ("[S]ince fugitives have no right to require government officials to comply with formal extradition procedures, the improper extradition of Plaintiff does not violate any federal rights giving rise to a cause of action under § 1983."); *Deering v. Bouchard*, No. 06-CV-11671, 2006 U.S. Dist. LEXIS 47992 (E.D. Mich. June 30, 2006) ("Once a fugitive is returned to the demanding state, the right to challenge extradition becomes moot; the fugitive is no longer being detained by the asylum state, and so, the legality of his or her detention there is no longer at issue. Petitioner already has been returned to the demanding state, Michigan; therefore, the legality of his extradition from California is moot.").

Plaintiff signed a waiver of extradition and has already been extradited to Michigan. Even if a violation of extradition procedures occurred, based on Sixth Circuit precedent, Plaintiff does not have a valid § 1983 claim against PTS or any of the agents who carried out the extradition. Accordingly, Plaintiff's claim alleging violation of Article IV, Section II, and 18 U.S.C. § 3182 against PTS and its agents will be dismissed for failure to state a claim upon which relief may be granted.

**Claim Two**

In Plaintiff's second claim, he states that he was denied access to call his attorney, denied access to mail, denied § 1983 forms, and denied the right to grievance procedures during his eight-day incarceration at DCDC. Prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). However, in order to state a viable claim for interference with access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999). "Thus, a

6

prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Further, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002). "Like any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's allegations fail to show that he suffered actual injury to any pending or contemplated litigation. Indeed, he was not prevented from timely filing the instant § 1983 action. Likewise, to the extent Plaintiff would assert the alleged denial of access to his counsel violated the Sixth Amendment, "[t]here is no Sixth Amendment right to counsel in extradition proceedings." *Burridge v. McFaul*, No. 97-3950, 1999 U.S. App. LEXIS 8171, at *6 (6th Cir. Apr. 23, 1999) (citing *United States v. Doherty*, 126 F.3d 769, 782 (6th Cir. 1997)). Moreover, Plaintiff fails to allege that denial of access to counsel during his eight-day incarceration at DCDC caused him actual prejudice to pending or contemplated constitutionally-protected litigation. *Burridge*, 1999 U.S. App. LEXIS 8171, at *6 (citing *Lewis,* 518 U.S. at 351). Therefore, Plaintiff fails to state a claim against Defendants DCDC, Boone,[2] Hill, Asbre, or Jones regarding denial of access to call his attorney, to mail, or to § 1983 forms.

With regard to his claim that he was denied access to file a grievance, it is clear from the complaint that he was able to file a grievance in that he states that his grievance was denied by Defendant Jones. There is "no constitutionally protected due process interest in unfettered

---

[2] Plaintiff identifies Defendant "Boonie" in the portion of the complaint where Defendants are to be listed but identifies Defendant "Boone" in the body of the complaint. The Court assumes that these are the same individuals.

7

access to a prison grievance procedure." *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005). By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."). Thus, Plaintiff's claim against Defendant Jones alleging denial of his grievance will be dismissed for failure to state a claim.

**Claim Three**

Plaintiff describes his third claim as a denial of equal protection, discriminatory practices, and administrative misconduct. First, Plaintiff fails to specify any race or other characteristic that would implicate any equal protection violation. *Newell v. Brown*, 981 F.2d 880, 887 (6th Cir. 1992) (Plaintiff must show that he "was victimized because of some suspect classification, which is an essential element of an equal protection claim.") (quoting *Booher v. United States Postal Service*, 843 F.2d 943, 944 (6th Cir 1988)).

As to Plaintiff's factual allegations, Plaintiff states that he observed Defendant Boone flash a taser-gun warning light on an unknown inmate's private area and that inmates were assigned to the bare floor with mats. These allegations do not present actions taken against Plaintiff himself. Plaintiff does not have standing to assert any claim on behalf of other inmates. *See, e.g., Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2002) ("*Pro se*" means to appear for

one's self; thus, one person may not appear on another person's behalf in the other's cause.). Therefore, Plaintiff's claims against Defendant Boone and DCDC will be dismissed for failure to state a claim.

Plaintiff also alleges that DCDC officers took inmates' ink pens and "attempted to take" Plaintiff's copies of grievance forms and phone numbers. Again, Plaintiff does not have standing to assert a claim on behalf of any other prisoner. *Id.* Based on Plaintiff's assertion that DCDC officers "attempted" to take his copies, it does not appear that the officers took anything from him. Even if they did, however, and the Court construed Plaintiff's allegation as a denial of his access to grievance procedures, as discussed above, "the mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x at 841. Therefore, the allegation that copies of his grievance forms were taken does not state a constitutional claim and will be dismissed for failure to state a claim.

In addition, Plaintiff claims that DCDC officers used "inappropriate behavior" toward inmates, which he describes as "rude threatening, loud, intimidating, outbursts." Although verbal abuse by prison officials is not condoned, the law is clear that even if the allegation of verbal abuse is true, verbal abuse by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Cumbey v. Meachum*, 684 F.2d 712 (10th Cir. 1981); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."). The Court is thus required to dismiss Plaintiff's allegations for failure to state a claim upon which relief can be granted.

**Claim Four**

Finally, Plaintiff's last claim alleges cruel and unusual punishment, negligent medical care, unsafe transportation, and unfair treatment.

**Unsafe transportation**

The Eighth Amendment's Cruel and Unusual Punishment Clause requires prison officials to ensure the "reasonable safety" of inmates.[3] *See Farmer v. Brennan*, 511 U.S. 825 (1994). With regard to Plaintiff's claims concerning unsafe transportation, a defendant's failure to fasten a prisoner's seatbelt, even following a prisoner's request to do so, does not, standing alone, violate the Cruel and Unusual Punishment Clause. *See Spencer v. Knapheide Truck Equip. Co.*, 183 F.3d 902 (8th Cir. 1999) (placement of pretrial detainee in a van without a seatbelt does not implicate the Eighth Amendment where the driver otherwise was cautious and auto accident was not the driver's fault). More specifically, a failure to provide seatbelts does not, by itself, constitute a substantial risk of serious harm rising to the level of a constitutional violation. *Id.*; *Smith v. Secretary for the Dep't of Corrections*, 252 F. App'x 301, 303-04 (11th Cir. 2007) (failure to fasten inmate's seatbelt in converted utility van does not constitute a substantial risk of serious harm); *Dexter v. Ford Motor Co.*, 92 F. App'x 637, 643 (10th Cir. 2004) ("failure to seatbelt an inmate does not violate the Constitution"); *Walls v. Kaho*, No. 5:06cv188, 2009 U.S. Dist. LEXIS 27840, at *2 (S.D. Miss. Mar. 31, 2009) (policy of refusing to seatbelt inmates

---

[3]The Eighth Amendment "was designed to protect those convicted of crimes" and does not protect pretrial detainees. *Ingraham v. Wright*, 430 U.S. 651, 664 (1977). Plaintiff states that he was a pretrial detainee. For the purposes of initial review, however, this is largely a distinction without a difference because the Due Process Clause of the Fourteenth Amendment provides pretrial detainees with rights analogous to those under the Eighth Amendment. *See Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001). Therefore, the Court will review Plaintiff's claims to determine whether he has properly alleged violations of the Fourteenth Amendment.

10

during transport does not give rise to a cognizable constitutional claim); *Ingram v. Herrington*, No. 4:06CVP65M, 2007 U.S. Dist. LEXIS 71781, at *5 (W.D. Ky. Sep. 26, 2007) (failure to seatbelt prisoner does not constitute constitutional violation); *Young v. Hightower*, No. 04-10309, 2007 U.S. Dist. LEXIS 54507, at *6 (E.D. Mich. Jul. 27, 2007) (refusing to seatbelt shackled prisoner does not constitute an excessive risk to the inmate's health or safety); *Mojet v. Transport Driver*, No. 06:cv321, 2006 U.S. Dist. LEXIS 85412, at *2 (N.D. Ind. Nov. 22, 2006) (transporting inmates in vehicles without seatbelts does not meet deliberate indifference standard). Plaintiff does not allege that the van's driver drove recklessly or that he was injured in any way. The failure to fasten a seatbelt alone does not give rise to an Eighth Amendment/Fourteenth Amendment claim. The Court finds the same logic applies to Plaintiff's claim that the van did not have air bags. As a consequence, Plaintiff's claims against PTS and its agents will be dismissed for failure to state a claim upon which relief can be granted.

With regard to Plaintiff's claim that the van's rear door was locked, "[p]rison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 548 (1979). Moreover, with regard to Plaintiff's claim concerning the lack of headrests and vents for air and exhaust, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987). A viable Eighth Amendment claim must satisfy both an objective component and a subjective component. *Farmer,* 511 U.S. at 834; *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). The objective component requires that the deprivation be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). An inmate must show that he

was deprived of "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "[P]rison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer*, 511 U.S. at 832 (citations omitted). The subjective component requires the defendant to act with "deliberate indifference" to a prisoner's health or safety. *Wilson*, 501 U.S. at 302-03. Plaintiff's claims concerning the van's locked door and lack of headrests and exhaust vents do not constitute acts of deliberate indifference to give rise to an Eighth Amendment claim, and those claims will also be dismissed against PTS and its agents.

**Denial of medical care**

Finally, Plaintiff states that when he was processed into DCDC on October 7, 2009, he informed DCDC staff members that PTS did not bring his blood pressure medicine and that he needed medical care. He states that he made requests to Defendant Nurse Tatem, but that he did not receive medical care until October 12, 2009. As a result he "suffered blindness, spotted vision, headaches, blood pressure was over 200 on the top number for over six (6) days." Upon review, the Court will allow Plaintiff's § 1983 claim for denial of medical care under the Fourteenth Amendment and state-law medical negligence claim to proceed against Defendant Tatem in her individual capacity.

Plaintiff also sues Defendant Tatem in her official capacity. "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)). Therefore, Plaintiff's official-capacity claim against Defendant Tatem is actually a claim against her employer, Daviess County. *See*

*Lambert v. Hartman*, 517 F.3d 433, 440 (6th Cir. 2008) (stating that civil rights suit against county clerk of courts in his official capacity was equivalent of suing clerk's employer, the county).

A municipality, however, "cannot be held liable *solely* because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691; *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-480 (1986)) (emphasis in original). A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery County, Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).

In the instant case, Plaintiff has not alleged that Defendant Tatem acted pursuant to a municipal policy or custom of Daviess County in causing his alleged harm. Plaintiff's claim that he was denied medical care appears to be an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum*, 176 F.3d 342, 348 (6th Cir. 1999) ("No evidence indicates that this was

anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that Defendant Tatem's actions occurred as a result of a policy or custom implemented or endorsed by Daviess County, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it. Therefore, Plaintiff's claim against Defendant Tatem in her official capacity will be dismissed for failure to state a claim upon which relief may be granted. Moreover, to the extent Plaintiff seeks to hold DCDC liable for the actions of Defendant Tatem under a *respondeat superior* theory, the claim against DCDC will also be dismissed for failure to state a claim.

The Court will enter a separate Scheduling Order governing the development of Plaintiff's individual-capacity claim against Defendant Tatem which will be permitted to proceed and will enter a separate Order dismissing all other claims.

Date:




cc: Plaintiff, *pro se*
 Defendants
 Daviess County Attorney
4414.010